In the State District Court five years ago this month, the first lawyer that Mr. Holt had removed it to federal court in billings and answered the complaint, admitting all of our allegations of a joint venture, and then filed an affidavit of Mr. Holt properly sworn, again affirmatively alleging a joint venture and supporting a motion to remove it to, excuse me, not remove, but to transfer to Bismarck, North Dakota Division, which was granted. Judge Smith Counsel, unless you're going to argue something on the process or procedure, we're pretty clear on that factually, but I think you'd use your time better to go to your legal points. Justice Breyer Thank you, Judge Smith. I am, of course, aware that a couple of weeks ago the trial judge, Judge Erickson, joined you as a colleague after the Senate approved, and he did conduct one of the most professional trials I've ever been in. However, we are here, lonesome dove, seeking a reversal, and I want to focus on the key issue that I seek reversal on, and that is during the course of the trial, during the cross-examination of Holt, present counsel for Mr. Holt objected on a line of questioning about the accounting, using the verb forced out of Holt during the discovery, and involving about 54 leases that lonesome dove was not privy to nor shared profits from, but monies to buy those leases came from commingled joint funds that were traceable to lonesome dove from the original joint venture that, because of Bodecker's connections to oil and gas money investors in Denver, even got off the ground. Mr. Holt was in abject penury. The judge sustained the objection on this line of accounting and tracing these monies and said, that ultimately invades the province of this court, because whether or not there's a duty to provide an equitable, excuse me, to an accounting is an equitable remedy, one that I will ultimately decide, and I don't think that's before the jury. I don't think we want to divert this trial in that direction. Counsel all accepted that and went forth abandoning that line of question on behalf of lonesome dove, and the jury was not queried, number one, as to whether or not the joint venture that they found had ever been dissolved, terminated, or ended. Secondly, the jury was never queried as to whether, under North Dakota law, if it did get dissolved, the tense of the question, was there a joint venture, that they answered yes, seemed to be in the present. I think they found the joint venture existed as of the date of their verdict, 8 April of 16, but they were never then asked, in addition to whether or not it had been terminated, and if so, when, they were never asked, was there . . . Were those instructions offered? We had preliminary instructions offered, but we withdrew them and didn't pursue that further when the judge said what I read because, to be blunt, we felt that was the right ruling. It probably was an issue in equity under North Dakota law for an accounting and to make all of those determinations, so no one on either side urged those questions be asked. Well, if the joint venture was not wound up, then why would you be entitled to an accounting? I think it was clear from the tenor and text of the answer to the question, was it breached, and Holt's position that it was over, that it probably was, and then, as the judge had reserved, equity would do the accounting. Well, but if it were wound up, I thought the jury found no breach of fiduciary duty. They found . . . By Holt. But they didn't find anything on accounting because the judge said he would do the accounting. It was a commingled account in a single account in a bank in Williston that over a hundred million dollars was run through over a period of eight years to which . . . How was the breach of duty defined? Was the duty defined to include an accounting? No. The question was . . . Not the question, but the definition of fiduciary duty in the instructions. The instruction never touched on the fact that if it is wound up, there must be a full and final accounting under North Dakota law that traces all of this. That's what the judge reserved to himself in equity, and that's what we urge is err that he then refused, and the language that he used when refusing to convene in equity as he had reserved to himself was the court agrees that the joint venture was not breached but fully performed and finds that further discovery would provide Lonesome Dove with no useful information not already presented to the court, the motion for equitable relief is denied. But that was only step one. What needed to be done was an examination of eight years of accounts that over a hundred million went through the single bank account in Williston and try to separate out where all of these leases came from and what money, because before we got stopped, we had shown 54 leases that had not been paid any money to Lonesome Dove had in fact partially been purchased with money that Lonesome Dove had left with everybody else in the joint venture between the fall of 04 and the spring of 05. How do we know that? How do we know that the leases were purchased with Lonesome Dove money? How do we know that the Fidelity distribution didn't cash out Lonesome Dove? That is a good question, Your Honor, and the answer to that is we do know that those 54 leases were purchased with monies in the joint venture account that were containing Lonesome Dove, Holt, and the money men from Denver's money. We do know that. What we don't know is what they had made when they finally bundled all of those leases and sold them in a couple other separate transactions after Holt claimed Lonesome Dove was no longer part of it. And by the way, there was no evidence that there had ever been any formal termination ever noticed. Lonesome Dove claimed never been told that, said that the play was over back in 05. Hardly part of those traced 54 leases were in the Lynn sale that was $98 million, Kraft and Chamley leases, just for example. So I think that the language of the court in denying equity that it said it would exercise and sort out these matters of accounting that we didn't want it before the jury was violated. Wasn't part of the court's logic was that if you succeeded in a legal claim, you would have an adequate remedy at law and there'd be no need to address matters of equity? No, we didn't understand his ruling to be that at all, Your Honor, because it was clear that the evidence was stopped that was going directly to that issue. And then we never did ask the jury, nor did they make a determination that there had been any kind of accounting because the judge had reserved that to himself after, you know, the issue was, is there even a joint venture? Once the jury determined that there was a joint venture and that it had not been breached, that the key here was you'd had a legal claim for a joint venture breach. And had you proven that, you would have had damages in that event. All of the evidence that was consumed in the question of whether there was a joint venture in existence and number three, was it breached, did not address the issues of if there was a joint venture, which was hotly disputed, and if it was not breached, which we disputed, there was already in that lawsuit claims for equitable accounting and distribution. And we had that claim in the draft of the plaintiff's contentions for the final pre-trial order that we had asked for this equitable relief. And that we wished that that would be determined at the trial. That was the purpose of our questioning of Holt on cross-examination when the judge sustained the objection, said no, this is inequity and I'll take it up myself when a jury verdict comes. And obviously what he was saying, if there is found a joint venture, then I will convene inequity and we will sort all of this out, which didn't occur. And that's what we asked be reversed and sent back to North Dakota to convene in equity and make this determination to include where were the proceeds of those 54 leases that were retained, that were purchased from the original joint venture fund that had lonesome dove monies in them. Now the jury instruction that I was thinking of earlier about fiduciary duty, as I read it here, number 13, said that one duty was to account to the joint venture, including accounting for the appropriation of a venture opportunity. I didn't read the whole definition, but question why didn't the jury's verdict of no breach of fiduciary duty mean that Holt had satisfied any duty to account to the joint venture? Because the exhibit that was the fidelity accounting from March 24th of 2005, your honor, clearly limits that to one sale, fidelity. And it does not, in fact, mean that the joint venture is over. That doesn't even mention the other 54 leases that should have been in play. What document are you referring to there? It is appendix 2104. It is what Holt claimed was the full and final accounting, and argued that to the jury. That's distribution after the fidelity sale, you mean? Yes. All right, that was his argument, and the jury found no breach of duty to account. So why doesn't that mean the jury agreed with Holt on that point? Well, I think they probably did agree with him that fidelity had been paid out, but they didn't get to have us fully explore those other 54 leases that we were stopped on objection, and the judge says that's a matter of equity, and I will decide those. I think that it is a real stretch to argue that that document there, appendix 2104 in any way, would satisfy the jury that there was a full and final accounting, because clearly there was not. That was one accounting. There were no other accountings regarding the 54 leases, because we didn't get to put that evidence on with our cross-examination of him. We were probably another day or two of examination of him with the records that we had. Some of them quite scant, but it was clear they did not hear about where those other leases went, how much the sale was, and how much the royalty interest and the overriding interest retained earned. There were earnings, and I think they still exist, but by not ordering the and convening equity like the court said he would, those questions are unresolved. The jury never heard them, and they would have had to hear that before they decided that the no breach meant that it had been fully wound up and accounted for. Mr. Edwards, you're within your rebuttal time. You can continue if you like, or you can reserve. Your Honor, I will shut up and save a little time for rebuttal. Thank you. Mr. Charles. Thank you, Your Honor. Mr. Chief Judge, members of the court, counsel. First of all, I couldn't more strongly disagree with opposing counsel on the issue of what the judge did in the trial court. If you go to appendix at 1409, we have the exchange, and that's where there was discussion about exhibit 60, which was admitted. And my objection was that plaintiff's counsel said this accounting was forced out of you. And I object to the term forced out, because it had simply been produced in discovery. And we see the judge at the bottom of appendix 1409 saying, I think when you say forced, it interjects an impropriety that ultimately invades the province of the jury. So what the judge was saying is you can continue with the exhibit, and in fact, if you look at the appendix, they continued at length in examining Mr. Holt about that document. They simply couldn't say it was forced out of him, because it had not, in fact, been forced out of him. And- What about the quote where he says the accounting is a matter to be taken up by the court, not the jury? Well, an accounting, if required, would be taken up by the court. But in order to have a right to an accounting, you'd have to have a joint venture that was breached. And as Your Honor pointed out, instruction number 13 talks about the obligation to account for a joint venture. And the testimony on accounting was not just that to which plaintiff's counsel pointed you, but John Holt said, I gave him a complete accounting. Brett Bodecker says, I was told the joint venture was over. Mr. Williams, whose testimony you're given, and is in our appendix beginning at page six, says the joint venture was over as soon as the lease play was over. That's when we concluded the final sale of the 50,000 acres to Fidelity. What you had at stake in this case was three different projects, if you will. One of them was the MCBT lease play, one of them was big ditch, and one of them was partial. And in order for the plaintiff to get himself a chance to get at those other two projects in which he was not involved, he had to claim this was a continuing joint venture, which went into perpetuity, which involved an area of mutual interest of everything east of the Nesson Anticline. Now, we'd asked the judge to rule as a matter of law, you cannot have in North Dakota with an oral agreement, an AMI that's everything east of the Nesson Anticline, because that's simply a geographical feature underground. It's like saying everything east of the Montana border. And we argued that you can't have an oral contract you're claiming under that says we get- You lost your statute of frauds argument, right? And we did, and we say that in the unlikely event you send this back, you should exercise the right of an appellate court and say under the law, the summary judgment should have been granted on those two issues. But you're right, we did, because the judge took a safer position and said we'll send it to the jury and have the jury determine the terms of the contract, and that's what happened. So we had at trial the plaintiff arguing it was a continuing joint venture that continued on in order to encompass the big ditch, which of course Mr. Flynn put together under a completely different theory than John Holt had initially. And Mr. Flynn and Mr. Williams went out and looked for another land man and couldn't find him under the evidence, and then hired John Holt to do the land man work. And then you have the partial play, which came about when John Holt, two years later, hears about a well that's hitting, so he decides to go try to get money so they can lease property and sink wells and then sell that project. Completely different than a lease play. And the jury in this case clearly found that the joint venture it found existed was a limited joint venture. It was limited to MCBT, and under the evidence presented, they could have found three or four different things. They could have found, because all of the evidence was the money people control it, and that's Flynn and Williams. They could have found that it was terminated by Flynn and Williams, and therefore it's not John Holt. Because remember, the special verdict form says, do you find a joint venture including John Holt and Brett Bodecker? Question number two, do you find by a preponderance of the, excuse me, question number three, do you find by a preponderance of the evidence John Holt breached the joint venture? And the evidence in the case was that the money people, David Flynn and Jim Williams, got angry because Brett Bodecker hadn't done what he said he would do, and they said, we're not having anything further to do with him. That would be a finding, a conclusion by the jury fully within the evidence. The jury could have found Brett Bodecker breached the joint venture agreement, because remember, under the evidence, the other three members all said Brett Bodecker was supposed to do geology, that he was supposed to do selling, and he was supposed to do mapping, and Brett took the position he didn't have to do anything. Now John Holt said, I told him, they got mad and quit, and Brett Bodecker's response was, I know, watch your back. When John Holt said, I'm going forward with them. So the jury could have believed all of that evidence and brought back a verdict that there was a joint venture, it wasn't breached by John Holt. The other thing they could have done is they could have found it was a two person joint venture. Because remember, Jim Williams says, the money people are going to get 75%, 25% was going to go to John Holt. I don't know what his deal was with Bodecker, but I know Bodecker was supposed to do the selling, the mapping, the geology. And John Holt said, I took my 25% and went to Brett Bodecker and said, I'll give you half of it if you will do these things. So the jury could have found, under the evidence, it was a two person joint venture that had not been breached by John Holt. My point is that there were no exceptions to the instructions. There were no exceptions taken because an instruction wasn't given. The case was tried over nine days with 13 witnesses. The jury got 280 some exhibits. Every exhibit that is cited to this court and every exhibit that was cited to the trial judge had been explained to the jury. And the same arguments made that were made here this morning to you were made to the jury, and the jury rejected them. Part of the reason for that may have been because when they put their expert on the stand who had over $33,000 in work in the case, and was an accountant who testified in 22 other cases, I said to him, can you testify that there was $1 that Mr. Bodecker didn't get from the MCBT lease play that he should have gotten? And there was an objection from plaintiff's counsel. You can't ask him what evidence he's not putting on, and the judge overruled the objection, and he said no. I said, can you testify that he suffered $1 in damage because six leases were included in big ditch that should have been included in the MCBT? He said, no, I can't say that. That's the evidence the jury heard, which would fully justify them in saying there was a joint venture. It was not breached by John Holt. And to the point of the accounting, when we look at instruction number 13, and it talks about the duty under the law, which is not this long, complicated duty to making a full accounting and file dissolution statements and so forth, even with a partnership. Under 4520 of the North Dakota statutes, there's a much broader duty to account that is more akin to what was included in instruction number 13, which says you account to your partners something Bodecker said he knew he was aware of, and as far as he was concerned, what he had was okay. But it says when you're trying to wind up a partnership, your liability is if you're grossly negligent, or if you take some action that is taken with intent. And the jury could have found, properly so under the evidence, that John Holt didn't do any of those things. In fact, when the question comes up on the Croft lease, why do you include it in big ditch? He says, Mr. Flynn told me to, and Mr. Flynn was the money man. We know in a lease play, you go out and lease properties that you may never sell. Even Brett Bodecker concedes that. You lease properties nobody may have interest in, they may have title issues, as happened with the Croft lease. Neither the jury nor the judge heard any evidence before the plaintiff rested the first time and before they rested the case that these leases they're complaining about now have value and they were not discouraged in any way from putting that evidence on if they thought they could prove it. What happened in this case is the jury accepted the argument and the evidence put on by John Holt. That it was a limited deal, one that yes, his first counsel had admitted was a joint venture. The money people who run the deal, Flynn and Williams, denied from the outset that it was a joint venture. They said it was a simple lease play. And when we became involved, we amended because we contended this admission that it was a joint venture, was in a conclusion of law which was inconsistent with the facts because nobody at trial, nobody testified that all parties had control. The testimony from all the witnesses was the money people control the leases you buy, the money controls the leases are sold, the money controls when it's over. And while Brett Bodecker kept insisting I have a right to input, he concedes at the end of my cross-examination, they don't have to take any of his input at all, which we did lose on that argument. You're right on summary judgment, and we've asked if this case goes back, that this court rule as a matter of law on that issue. Under North Dakota law, if you don't have joint control, you don't have a joint venture. It was a question the jury asked, what do we do with this element number two in instruction number 12? What does constitute joint control? And of course, we didn't give them much of an answer as you don't, except to please read the instructions and consider the evidence. So where are we today? We're looking at a jury verdict on a case well tried by plaintiff's counsel, vigorously contested on this side of the table, with a jury verdict that says one joint venture, but not breached by John Holt. And that should conclude it. We know- What about the two counts that never went to trial? So we have the unjust and negligent misrepresentation. As I read your brief, you're really saying no proof of damages. But the district court didn't rely on that rationale. The district court said under North Dakota law, as I read his order, it has to be a misrepresentation that induces a contract. Or induces some particular act. And I can't remember the- Narrower than that. You don't think it's narrower than that under North Dakota law, that it has to be a misrepresentation that induces a contract? I think you must allege under North Dakota law facts of misrepresentation, the actions that you took in reliance on those misrepresentations and then damages. It was that second element that is not contained anywhere in plaintiff's complaint. That is, they allege a whole lot of misrepresentations. They don't allege in the complaint anywhere, as they testified at trial, that if it hadn't been for these misrepresentations, I would have come rushing five hours from Billings up to the area up there and I would have been signing up leases. They don't make that claim. In their initial disclosures, they don't say we have damages because we would have signed up a bunch of leases if we had known it was going on. And I think what the judge was holding is that there's no allegation in the complaint that because of the misrepresentations, we refrained from taking specific actions. And in their briefing papers on the summary judgment, I don't find anywhere in those briefing papers, they said, as they said at trial, that had we not had that misrepresentation, I would have come up to Williston and I would have been out there signing up leases. So I think those are what was missing from that first, when we took the negligent misrepresentation and moved for summary judgment on it, and that's what I thought the judge was holding, but judge harmless error anyway, as we point out in the brief. Because under North Dakota law, if there's a tort claim in here and the contract claim, that verdict form is going to have Flynn and Williams on it. And under the evidence in the case, Flynn and Williams were driving that lease play completely and it was entirely likely that they would be assessed virtually all the responsibility if there was a tort involved. And that's why plaintiff's counsel said we're withdrawing our tort claim and want just the jury claim submitted. And that colloquy, I'm sorry? You mean just the contract claim submitted? Yes, just the contract claim was submitted. And it's in the whole appendix at page 146 through 151. And at 151, Mr. Edwards is saying, so that we're clear, you have in your mind and on the record that we have withdrawn, as you suggested, the claim on that tort, so that it is strictly the contract. And that's because if you look back through that, the judge is saying, if we have a tort claim in here, Mr. Edwards, we're going to have four people on that, and if I'd been in his shoes, I would have withdrawn it too. Because Flynn and Williams both testified by video deposition that they're the ones that have made the decisions. And even plaintiff's experts said the money people make the decisions. So I think, to answer your question, I think the negligent misrepresentation claim is properly out of there. I think it would have been withdrawn anyway at the last minute, because otherwise Flynn and Williams, who are the money people, and said, we got mad at Brett Bodecker, we said we're not going forward with them, would have been assessed virtually all the fault under North Dakota law. The unjust enrichment claim, I believe, is out properly, because there was a contract. The question was, what's the extent of the contract? And while the plaintiff claims that the first counsel in there admitted all terms of the joint venture, counsel didn't, that answer that was filed admitted there was a joint venture, but said there was no AMI. There was no ongoing obligation. It said it was a lease play that was a joint venture, which is essentially what the jury found. So there was a contracted issue, and what the unjust enrichment claim was allowing the plaintiff to do is to try to essentially destroy the rule. That if you have a law claim, a claim of contract, you don't have a claim of unjust enrichment and say that we've got a contract. But if we can't win on that contract, then we must have unjust enrichment for everything else we want to have a shot at. Well, can't you have a claim that if there's a contract that ends at a certain date, and then there's activity after the contract has expired, that there could be unjust enrichment in the later period? I can't find a single case where any appellate court has upheld an unjust enrichment claim where a contract claim goes forward. I've seen unjust enrichment claims where there's no contract, and I would suggest it doesn't make any sense for this reason, Your Honor. A contract is an offer, acceptance, and consideration, to put it on the basic level. So if you do something, and there's a contract in place, and you get the negotiated consideration, so there's no breach of contract. Then, particularly on the facts here, you have no legitimate claim for unjust enrichment, because then you're asking for something beyond what you already have received consideration for. And on these facts, there is no claim in the evidence, no fact in evidence, except Brett Bodecker saying, I introduced him to David Flynn. So there's no, and that- Well, that's true as to the original lease play. But I thought his argument was after the joint venture ended, assuming it ended after the fidelity sale, there was activity as to future leases that justify an unjust enrichment claim. That's an argument they've sort of tailed on to lately here, but that they never have acknowledged the fact the joint venture may be over. And I would submit that the evidence that went in under law and equity prior to the rest of the case shows nothing that would justify allowing an unjust enrichment claim to go forward after that point. Because even if you want to focus on these leases he talks about now and talked about to the jury before, they never put any value on them. And fundamentally in a lease play, you may have leases with no value. You look at the fact that early on in the lease play in 2004, the middle of the year, Flynn and Williams are saying we want to sell the leases so we don't get stuck with them. Remember these are leases for a five year term, and if you don't find somebody that will buy them, they're just going to expire. They're not like something you have that will be forever useful. If there are title problems in them, if there are simply nobody interested in buying them, then you have them and have something that's worthless. There's reference in the record you do have to an Anaconda lease play, for instance. Which is a little bit off topic, but that's one put together by Brett Bodecker, where he claimed John Holt went out and bought some leases for him. And you'll remember Baumgardner did some of the early work on it, but the fact of the matter is those leases all expired. They were leases purchased by Brett Bodecker in the Anaconda play, but there was no second side of the play, so you lose it. So we talk about leases out here. The plaintiff had full opportunity to put on evidence as to what they were worth, if they were worth anything. What the plaintiff did was argue a continuing lease play forever with an AMI that was indefinite and was everything east of the Ness and Anticline, and the plaintiff lost. That should be the end of the story. The obligations they want to impose to terminate a joint venture or a limited partnership make no sense. If you think of how they would apply, if you have two people that get together and build a house and then split the proceeds, and now you've got to go out and file these things, doesn't make any sense at all. The judge did a good job in this case. His decisions should be affirmed. Unless you have questions, that's all I have. I see none. Thank you, Mr. Charles. Thank you. Mr. Edwards, your rebuttal. As one of my all time favorite politicians said during his run for the presidency in 92, here's the deal. The deal is we need a reversal, sending it back to North Dakota to conduct equity. Because when the judge said whether or not there's a duty to provide an accounting is an equitable remedy, one that I will ultimately decide, I don't think that's before the jury. How can there be an argument that instruction 13 then allowed the jury by finding no breach, which is different than to provide a full accounting, have been decided by the jury. And this violates the seminal law in North Dakota in the Sandvik case, which says in essence that a partnership continues until there is a complete winding up of business and accounting. All we have is fidelity. In North Dakota, our partnerships and joint ventures treated the same? Yes, exactly. And that is the case of either Stuber or Engstrom, I can't remember which, we cited it in the brief. But a JV is equal to a partnership in North Dakota. And subject to, and it may even have been Sandvik, I'm sorry I forget that. But there is no way a jury could have made the decision being urged here when the judge reserved it to himself and did not then do it, refusing on the grounds the jury decided it when they couldn't have when he said that duty is for me. I believe that what has resulted is deprivation of lonesome dove's property without due process because of getting caught in that cross saw. It is my request that the case be reversed on the grounds, the limited grounds, that we go back and convene an equity court and do what the judge said he would do. Thank you. Thank you, Mr. Edwards. Thank you also, Mr. Charles. Court wishes to thank both counsel for your presence and the argument you provided the court. The briefing, we'll take the case under advisement under decision in due course. Thank you.